IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DEVIN BENNETT                                                                          PLAINTIFF

v.                                                                     No. 4:12CV108-MPM-DAS

CAPTAIN NORRIS MORRIS, ET AL.                                                       DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Devin Bennett, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the general conditions of his confinement while incarcerated at the Mississippi State Penitentiary were unconstitutionally harsh. The defendants have moved for summary judgment; the plaintiff has responded, and the parties have submitted additional briefing. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and judgement will be entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not

"assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the*

*record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

Mr. Bennett alleged facts to support various constitutional violations in his original complaint and via several amendments to that complaint. The allegations in his original complaint involved a claim of unconstitutionally harsh general conditions of confinement, while those in his amendments involve problems with preparation and service of food (which is also a general conditions of confinement claim), retaliation (in the form of declining to repair a television antenna), and bare allegations of denial of adequate medical care and "security."

**Original Claims (Unconstitutional general conditions of confinement)**

*Leaking cell (No. 1)*

Mr. Bennett alleges that "several" cells leak when it rains on A-Zone. [81] at 2. He concedes, however, that the defendants attempted to repair the leaks, but the repairs are not completely watertight when it rains. Mr. Bennett has not alleged that he faced a substantial risk of harm resulting from an occasional leak during a rain storm.

*Lack of Cleaning supplies (No. 2)*

Bennett also claims that inmates are not receiving adequate cleaning supplies. [81] at 2. He does not claim a total deprivation of cleaning supplies, but instead that inmates only receive "one or two out of the four chemical agents we are supposed to receive" and that "sometimes those are watered down." *Id*. He does not allege he is completely deprived of cleaning products nor that the

cleaning supplies he receives are totally inadequate. Rather, he alleges that he would like additional choice regarding his cleaning supplies and he would like them to have a stronger concentration.

*Window screens and pest control (No. 4)*

Mr. Bennett claims that there are still gaps in "several" of the windows in Unit 29-J and that "several" of the screens that have been placed over the windows do not fit properly. [81] at 2. This claim relates to pest control. While Mr. Bennett concedes that MDOC's efforts at pest control are consistent, he feels they are nonetheless inadequate. *Id*. He believes that MDOC uses weak pesticides and does not spray in all the areas that should be sprayed, though the pest control personnel consistently spray once a month. *Id*.

*Inadequate lighting (No. 5)*

Bennett claims the lighting in his cell is inadequate. [81] at 2. However, he also alleges that MCOC later installed substantially brighter bulbs.

*Housing of Mentally Ill Offenders (Nos. 6 & 7)*

Mr. Bennett complains that mentally ill inmates sentenced to death who are housed with him in Unit 29 disrupt his quality of life. [81] at 3. MDOC does not, however, have discretion in housing inmates sentenced to death. Male inmates convicted of a capital offense where the death sentence has been imposed must, by statute, be committed to the custody of MDOC and transported to the maximum-security cell block at Parchman. Miss. Code Ann. § 99-19-55(1). The exclusive remedy for removing such an inmate that may become mentally ill after his criminal judgment is through an application seeking post-conviction relief with the Mississippi Supreme Court. Miss. Code Ann. § 99-19-57(2)(a). Further, the legislature has defined a mentally ill inmate in this context to be an inmate the Mississippi Supreme Court finds does "not [to] have sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the

impending fate that awaits him, and a sufficient understanding to know any fact that might exist that would make his punishment unjust or unlawful and the intelligence requisite to convey that information to his attorneys or the court." Miss. Code Ann. § 99-19-57(2)(b).

### *Rotation of Close Custody Offenders (No. 8)*

Mr. Bennett alleges that close custody offenders, who are not part of the High Risk Incentive Program, are not being rotated out of Unit 29-J every thirty days. [81] at 3. MDOC currently houses Close Custody-High Risk offenders in the death row building. *Aff. of J. Williams*, ¶ 4. However, these inmates are not housed in cells with death row inmates. *Id*. MDOC does, in fact, do a 30-day rotation with these Close Custody-High Risk offenders. *Id*.

### *Death Row Incentive Program (No. 9)*

The plaintiff claims that, while there is a death row incentive program in place, it is not being properly regulated. [81] at 3.

### *Hawk call (No. 11)*

Mr. Bennett claims that the hawk call purchased by MDOC to scare away birds stopped working and has not been replaced. [81] at 3.

### *Additional Canteen Items (No. 14)*

Bennett complains that there are not additional items beyond the normal canteen which death row inmates can purchase. [81] at 3. He states that this is "not complicated" as it is done electronically, and the tier workers could have "15-20 additional items available to order from canteen it[']s simply a matter of creating a special list only for them."

### *New Toothbrushes (No. 15)*

Mr. Bennett complains that he has not received a new toothbrush every quarter in violation of the settlement agreement. [81] at 3.

*Proper installation of digital antenna (No. 17)*

Mr. Bennett claims that in January 2016 MDOC installed a digital antenna, but "they did not know what they were doing and as a result, he lost some of his in-cell programming." [81] at 4. He alleges that a technician ultimately fixed the problem and that cable TV was restored to Unit 29-J. *Id*. He claims, however, that a pipe burst in October 2016 which again knocked out his antenna reception.

**NEW CLAIMS**

The court also allowed Bennett to amend his complaint to add new claims. [94]. In his Amended Complaint, Bennett complains about the preparation and serving of food and kitchen oversight in Unit 29, "retaliation", "medical care", and "security." [85] at 4. He does not expound on these claims, except to allege that the defendants are delaying the repair of the digital antenna "in retaliation." [81] at 4.

*Unit 29 Kitchen*

In July 2016 the kitchen in Unit 29 was closed by the Mississippi State Department of Health ("MSDH") based on poor sanitation conditions, repeated health inspection violations, and dilapidated and inoperable kitchen equipment. *Aff. of J. Williams*, ¶ 5. After the kitchen closed, MDOC spent approximately $1 million to renovate it and supply new equipment. *Id*. at ¶ 6. MSDH inspected the kitchen on December 21, 2016, and on June 8, 2017, and gave the facility an "A" score. *Id*. at ¶¶ 7-8. The Unit 29 kitchen reopened on June 14, 2017. *Id*. at ¶ 9. MSDH inspected the kitchen on October 24, 2017, and on June 6, 2018, and gave the facility a "B" score. *Id*. at ¶¶ 10-11. MSDH inspected the kitchen on November 19, 2018, and again gave the facility an "A" score. *Id*. at ¶ 12.

*Retaliation*

Mr. Bennett believes that the defendants have delayed the repair of the digital antenna "in retaliation." [81] at 4. He specifically alleged the antenna did not work because "they did not know

what they were doing and as a result, Plaintiff lost some of his in-cell programming." [81] at 4. Bennett further claims a technician ultimately fixed the problem, and cable TV was restored to Unit 29-J, but that a pipe burst in October 2016 which knocked out his antenna reception. *Id*.

*Medical Care*

Mr. Bennett has made a bare claim for denial of medical care – without identifying his medical problem or the treatment he believes he should have received for it. He has not stated how any of the defendants have been deliberately indifferent to his medical needs.

*Security*

Bennett also makes a bald complaint that there are "problems with … security" at Unit 29-J. [85] at 4. Mr. Bennett has made no factual allegations regarding his "security" claims in his Amended Complaint.

**General Conditions of Confinement**

Most of Mr. Bennett's claims in this case involve allegations regarding the general conditions of his confinement. "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do

not rise to the level of a constitutional violation. The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581.

None of Mr. Bennett's allegations regarding general conditions of confinement rise to the level of a constitutional violation. As to a ***leaking cell***, he has not alleged that he suffered substantial harm from the water entering his unit, and, in any event, a cell that leaks during a rainstorm, without more, does not rise to the level of a constitutional violation. *See Cotton v. Taylor*, 176 F.3d 479, 1999 WL 155652, at *2 (5th Cir. 1999) (per curiam) (unpublished)(conditions of confinement violated Eighth Amendment where plaintiffs testified that, due to leaking roofs, "there was so much water on the floor at times that the electrical receptacles would spark and smoke and that they feared electrocution").

His claim regarding ***inadequate cleaning supplies*** is likewise without merit. He complains that he would like more choice regarding his cleaning supplies, including supplies with more concentrated chemicals. He does not allege that he faces a substantial risk of harm resulting from the cleaning products he receives. Further, Mr. Bennet has not alleged that the defendants were deliberately indifferent regarding cell cleanliness. He concedes that he receives cleaning supplies, but not the supplies he would prefer. Put simply, prisoners possess no constitutional right to any particular cleaning supplies: "Prisoners simply are not entitled to the cleaning supplies of their choice." *Thomas v. Gusman*, Civ. Action No. 11–1424, 2012 WL 607970, at *4 (E.D.La. Jan. 27, 2012), adopted, 2012 WL 607698 (E.D.La. Feb. 24, 2012); see also *Simmons v. Gusman*, Civ. Action No. 14–1907, 2015 WL 151113, at *5 (E.D.La. Jan. 12, 2015); accord *Tallmore v. Hebert*, Civ. Action No. 07–1220, 2008 WL 2597939, at *3 (W.D.La. May 28, 2008) ("There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials.") (adopted by Doherty, J., on June 26, 2008); *Ellis v. Crowe*, Civ. Action No. 09–3061, 2010 WL 724158, at * 16 (E.D.La. Feb. 19, 2010)(rejecting

a prisoner's claim that the cleaning supplies provided were not "the right stuff"). These allegations fail to state a constitutional claim.

Mr. Bennett also argues that MDOC's ***pest control program***, while consistent, is nonetheless inadequate. However, the very fact that that MDOC's pest control efforts are consistent undermines the argument that they are poor enough to constitute deliberate indifference. The presence of insects and pests in a rural Mississippi prison unit does not, alone, establish a constitutional violation. *See, e.g., Alex v. Stalder*, 73 F.App'x 80, 2003 WL 21756781 (5th Cir. June 24, 2003) (fact that snake came into prisoner's cell, and that he had been bitten by ants and spiders, did not establish an Eighth Amendment violation and the case was correctly dismissed as frivolous); *Benjamin v. Gusman*, civil action no. 17-07014, 2018 WL 1448759 (E.D. La., February 22, 2018), Report adopted at 2018 WL 1419870 (E.D. La., March 22, 2018) ("mere presence of spiders or such similar pests does not rise to the level of a constitutional violation" even though plaintiff was bitten). These allegations fail to state a constitutional claim.

The plaintiff has not supported his claim regarding ***insufficient lighting*** with factual allegations. Mr. Bennett alleged in his response to the defendants' motion for summary judgment that he does not know what the light level is inside his cell. He states, however, that MDOC has now installed new bulbs which are significantly brighter than the old ones. Further, he has not alleged facts to show that the level of light in his cell has exposed him to a substantial risk of serious harm. As such, he has not stated a claim for which relief could be granted as to the level of light in his cell.

Mr. Bennett also claims that the defendants violated the Eighth Amendment prohibition against cruel and unusual punishment by housing on Death Row ***mentally ill inmates*** who have been sentenced to death with the other Death Row inmates who are not mentally ill. The Mississippi Department of Corrections is, however, bound by statute to house male inmates sentenced to death in

the maximum-security cell block at the Mississippi State Penitentiary (Death Row). *See* Miss. Code Ann. § 99-19-55(1). The only way to house a mentally ill Death Row inmate elsewhere is through an application seeking post-conviction collateral relief with the Mississippi Supreme Court. Miss. Code Ann. § 99-19-57(2)(a). Even then, the Legislature has narrowly defined "mentally ill" in this context to mean an inmate who "does not have sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the impending fate that awaits him, and a sufficient understanding to know any fact that might exist that would make his punishment unjust or unlawful and the intelligence requisite to convey that information to his attorneys or the court." Miss. Code Ann. § 99-19-57(2)(b). The defendant MDOC employees do not have the power to house mentally ill Death Row inmates anywhere other than Unit 29-J. This allegation does not state a valid constitutional claim.

Mr. Bennett claims that ***close custody offenders, who are not part of the High Risk Incentive Program, are not being rotated out of Unit 29-J every thirty days***. [81] at 3. The evidence available shows, however, that close custody inmates *are* being rotated out every 30 days. Prisons are "necessarily-dangerous places," which "house society's most antisocial and violent people in close proximity with one another," thereby making it inevitable that "some level of brutality ... among prisoners" may occur. *Farmer v. Brennan*, supra, 511 U.S. at 858–59 (Thomas, J., concurring). *See also Verrette v. Major*, 2011 WL 3269319, *2 (W.D. La. July 29, 2011) (dismissing an inmate's failure-to-protect claim upon a finding that, even if the defendant was aware of an inmate's history of violence, "[p]risons are dangerous places housing dangerous people" and "[i]t is unreasonable to believe persons overseeing the classification of inmates for work assignments and housing can prevent all potential prisoner-on-prisoner violence"). Mr. Bennett has not alleged that he lives in fear for his

safety from the Close Custody-High Risk inmates; instead, he alleges that these inmates are engaging in disruptive behavior. [81] at 3. This is not enough to establish a constitutional violation.

The plaintiff claims that ***the Death Row incentive program is not being properly regulated***. [81] at 3. He claims that the privilege of playing basketball occurs on a first come first serve basis, and is not reserved for those that earned the incentive. *Id*. There is no constitutional right for an inmate to have access to an incentive program; as such, this allegation will be dismissed for failure to state a claim upon which relief could be granted.

Mr. Bennett claims that ***the hawk call used to repel birds has broken*** and no longer keeps birds away from Unit 29. Inmates, however, have no constitutional right to be free from birds during yard call. In any event, as the defendants attempted to alleviate the bird problem by installing the hawk call, Mr. Bennet has not shown that they have been deliberately indifferent in addressing the problem.

Bennett alleges that ***Death Row inmates are permitted only regular canteen items***. He argues that addressing this problem is "not complicated" as it is done electronically, and the tier workers could have "15-20 additional items available to order from canteen it[']s simply a matter of creating a special list only for them." The inability to purchase additional items beyond basic canteen items does not rise to the level of a constitutional violation as it does not implicate the deprivation of a basic human need. These allegations fail to state a claim upon which relief could be granted.

Mr. Bennett alleges that ***he has not received a new toothbrush every quarter*** in violation of a previously negotiated settlement agreement. [81] at 3. He has not alleged that he has been completely deprived of a toothbrush, only that he has not received a new one in accordance with the settlement agreement. This is simply not sufficient to trigger a claim of inadequate access to personal hygiene items.

Mr. Bennett claims that in January 2016 MDOC installed a digital antenna, but "they did not know what they were doing and as a result, he ***lost some of his in-cell programming***." [81] at 4. The denial of several channels of cable television simply does not rise to the level of a constitutional violation.

Mr. Bennett also alleges that the Unit 29 ***kitchen is unsanitary***. Indeed, the kitchen was closed down for that reason in 2016. However, as reflected by the MSDH inspections, MDOC and its contract vendor, Aramark, have continually improved the equipment, kitchen practices, and food quality in the Unit 29 kitchen since it reopened. The kitchen then completely renovated and has received either an "A" or "B" score from the Health Department since. In any event, Mr. Bennett has not shown that he faced a substantial risk of serious harm from the condition of the Unit 29 kitchen; as such, he has not shown that the defendants were deliberately indifferent to his health regarding kitchen conditions.

**Retaliation**

Devin Bennett believes that the defendants are ***delaying the repair of the Unit 29 digital antenna "in retaliation."*** [81] at 4. Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison

official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Mr. Bennett must prove that he engaged in constitutionally protected activity (seeking redress for grievances), faced significant adverse consequences, and that such action was taken "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988).

Prisoners routinely file grievances against prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to file a grievance, then receive a Rule Violation Report sometime thereafter. Thus, to avoid turning nearly every charge of prison rule violations against a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

First, Mr. Bennett has not shown that a problem with the digital antenna qualifies as an adverse retaliatory act, such that it would deter a person of ordinary firmness from further exercising his constitutional rights. *See Morris*, 449 F.3d at 684-85, 686. Even if a failure to repair the digital

antenna constituted a qualifying adverse retaliatory act, Bennett has not alleged facts showing intent on the part of a defendant to retaliate against him for exercising his constitutional rights. In addition, he specifically alleged the antenna did not work because "[the repair technicians] did not know what they were doing," not out of a desire to retaliate. [81] at 4. Bennett further claims a technician ultimately fixed the problem, and cable TV was restored to Unit 29-J, but that a pipe burst in October 2016 which knocked out his antenna reception. *Id*. Thus, there is no evidence in this matter to suggest that "but for" a retaliatory motive on the part of the defendants, Bennett's digital antenna service in his cell would have been uninterrupted. This claim is without merit.

In this case, Mr. Bennett has offered only his personal belief that the defendants have delayed repairing the digital antenna in an effort to retaliate against him (presumably for seeking redress for these various grievances, though he does not elaborate). As set forth above, an inmate's personal belief that he is the victim of retaliation does not rise to the level of a § 1983 claim for retaliation. *Woods, supra.*

### Denial of Medical Treatment

As to this claim, Mr. Bennett alleges only that the defendants denied him medical treatment, without identifying his medical issue or the treatment he believes the defendants should have provided to him. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate

indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.  Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*.  Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).  In cases arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000).  A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Mr. Bennett has not provided any facts to support his allegation of denial of medical care.  As such, he has failed to state a constitutional claim regarding this issue.

**Security**

Mr. Bennett merely mentions "security" in his amended complaint, without providing any facts to define or support that claim.  He has not shown that he faces a substantial risk of serious harm to which prison officials were deliberately indifferent, *Farmer*, 511 U.S. at 834; as such, this allegation must be dismissed for failure to state a claim upon which relief could be granted.

## Conclusion

For the reasons set forth above, none of the plaintiff's claims have merit. The defendants' motion for summary judgment will, therefore, be granted, and judgment will be entered in favor of the defendants. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 6th day of January, 2020.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**